**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| TERRIE BANHAZL d/b/a HEIRLOOM CERAMICS,<br>　　　Plaintiff<br><br>v.<br><br>THE AMERICAN CERAMIC SOCIETY,<br>　　　Defendant. | Civil Action No:<br>1:16-cv-10791-ADB<br><br>**JURY TRIAL DEMANDED** |

THE AMERICAN CERAMIC SOCIETY,
　　　Counter-Plaintiff

v.

TERRIE BANHAZL d/b/a HEIRLOOM CERAMICS,
　　　Counter-Defendant.

**PLAINTIFF TERRIE BANHAZL'S REPLY**
**CLAIM CONSTRUCTION MEMORANDUM**

Plaintiff Terrie Banhazl ("Banhazl" or "Plaintiff"), having accused Defendant The American Ceramic Society ("ACS" or "Defendant") of infringing claims 1-2 and 4-9 of U.S. Patent No. 7,622,237 (" '237 Patent") submits this reply in response to ACS's Opening Brief on Claim Construction (Docket No. 31).  For the reasons set forth herein and in Plaintiff's Opening Claim Construction Memorandum ("Plaintiff's Opening Brief") (Docket No. 30), this Court should adopt Plaintiff's proposed constructions. [1]

## ARGUMENT

### A.  Person of Ordinary Skill in the Art

Plaintiff disagrees with Defendant's proposed definition of "person of ordinary skill in the art."  *See* Docket No. 31 at pg. 3 and Docket No. 31-1.  Defendant's definition of one skilled in ceramics and in the art of the '237 Patent would exclude everyone *except* those with a college degree in ceramics.  Such a definition precludes the inventor of being skilled in her patent despite her extensive experience and recognition in the field.  *See* the September 29, 2017 Declaration of Terrie Banhazl at ¶¶ 4-10, 17 & 18,  attached hereto.  Banhazl developed the method described in the '237 Patent because nothing she had encountered allowed her to make a lead free, oven and dishwasher safe ceramic platter with a high quality fine print reproduction fired onto the surface without use of expensive machinery or toxic cover coat.  *Id.* at ¶ 20.  The '237 Patent was intended so that people "**without specialty manufacturing equipment**… or **specialized training**" could "easily, economically and safely apply one of a kind high quality photographic images onto a transfer agent and permanently affix these images on to functional kiln fire able ceramic or glass surfaces."  *Id.* and '237 Patent at Col. 1, Lns. 21-16 (emphasis added).

---

[1] As set forth in the parties' stipulation (Docket No. 32, endorsed by the Court, Docket No. 33), Mr. Lawrence was unavailable to be deposed prior this reply due to medical reasons. Banhazl will address his claim construction declaration/testimony in a separate supplementation.

**Plaintiff's Reply Claim Construction- 1**

One can develop skills in ceramics through persistence, recreational courses, self-directed study, practice, and trial and error.  Banhazl Decl. at ¶ 19.  Thus, a person of ordinary skill in the art is one who has at least two years of experience making ceramics, taken approximately 2-3 preliminary courses – whether recreational or through a high school or college – and has familiarity with the tools and materials used in ceramics.  *Id.* at ¶ 22.

### B. "Permanently"

| Claim Term | Banhazl's Proposed Construction | ACS's Proposed Construction |
|---|---|---|
| "permanently" | Plain and ordinary meaning. Preamble not limiting. | In a way that exists perpetually |

Asserted claims 1 and 8 refer in the preamble to "a method of **permanently** transferring an image to a substrate having a glossy surface."  *See* '237 Patent, claims 1 and 8 (emphasis added).  The parties' proposed definitions for this term are set forth above.  Defendant asserts that "permanently," as a part of the preamble, is a claim limitation.  In doing so, Defendant misinterprets the claims of the '237 Patent and applicable claim construction precedent.

ACS first argues that the term "permanently" is limiting because the preamble provides antecedent basis for the terms "glossy surface," "substrate," and "image."  *See* Docket No. 31 at pg. 7.  While correctly stating that dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope, ACS then erroneously assumes that the entire preamble is limiting because a portion of the preamble provides antecedent basis.  As explained in detail in Plaintiff's Opening Brief, the entire preamble is not construed as a limitation simply because a portion of the preamble provides antecedent basis for specific claim terms.  *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. June 19, 2015); *see also,* Docket No. 30 at pp. 7-8.

The preamble of claims 1 and 8 can be separated into two distinct sections: (i) "A method of permanently transferring," and (ii) "an image to a substrate having a glossy surface."  The first section is a general description of the method – a permanent transfer process – while the second

**Plaintiff's Reply Claim Construction- 2**

section answers *what* is being transferred to *where*. The second section provides antecedent basis for the claim terms "image," "substrate," and "glossy surface." However, the first section merely describes the outcome of the invention, and cannot be construed as a separate limitation.

ACS's second argument, that Banhazl relied on the preamble to limit the claims in view of the prior art, is equally flawed. ACS again relies on the second section of the preamble to incorporate the term "permanently" as a claim limitation. Preamble language merely extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant. *See Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002). The uniqueness of the invention, which separates the invention from the prior art, does not lie in the permanence of the transfer. Even in ACS's own examples, Banhazl does not rely on the permanence of the transfer to distinguish the invention from prior art nor to argue for its nonobviousness. Taking ACS's examples in context, the prosecution history shows that Banhazl used the heating element to distinguish the invention from the prior art: "Banhazl contended that the prior art were not relevant because **neither taught processes of heating** 'in order to permanently embed or sink into a glossy surface.'" *See* Docket No. 31 at pg. 8 (emphasis added).[2] For these reasons, and those set forth in Plaintiff's Opening Brief (Docket No. 30 at pp. 5-8), the term "permanently" should not be construed as limiting.

C.  **"Glossy surface"**

---

[2] In addition, the prior art cited in the '237 Patent use the term "permanently" to similarly describe the eventual outcome of practicing the invention as permanent: "Once again, this achieves a *permanent* imprint on the ceramic or glass product." *See* U.S. Patent No. 6,487,386 to Zimmer (2002) Col. 2, Lns. 36-37 (emphasis added); "Good adhesion can be achieved by carefully designing the image-receiving layer to obtain *permanent* chemical and/or physical bonding between the image-receiving layer and the substrate." *See* U.S. Patent No. 6,624,118 to Tang (2003) Col. 1, Lns. 39-42 (emphasis added); "The image heating device includes a fixing device for heating and fixing an unfixed image on a recording material into a *permanent* fixed image thereon." *See* U.S. Patent No. 6,674,978 to Susuki (2004) Col. 1, Lns. 8-10 (emphasis added). Banhazl clearly intended that the term "permanently," as similarly used in the prior art, to describe – not limit – the invention.

**Plaintiff's Reply Claim Construction- 3**

| Claim Term | Banhazl's Proposed Construction | ACS's Proposed Construction |
|---|---|---|
| "Glossy surface" | Plain and ordinary meaning, or the outside of a glazed ceramic piece fired in a kiln or a glass object. | Defines "substrate having a glossy surface" as a glaze-coated or inherently glossy object in which an **additional** glaze is applied to the object prior to an image being applied to the object via a transfer agent. (emphasis added) |

Several asserted claims of the patent-in-suit also recite the step of transferring an image to a "glossy surface." *See* '237 Patent, claims 1, 3, 4, 7-9. Banhazl's proposed construction that "glossy surface" should be construed consistent with the plain and ordinary meaning of the term (as understood by those skilled in the art), or in the alternative, as the "outside of a glazed ceramic piece fired in a kiln or a glass object," is supported by the specification of the '237 Patent.

Banhazl uses the term "glossy surface" in her patent to refer to the outside of two different types of media: glass and glazed ceramics. In both instances, the surface of these items is glossy (smooth and shiny). The surface of glass is intrinsically glossy while bisque (unglazed ceramic piece) requires glaze to become glossy. In contrast, ACS defines the phrase "substrate having a glossy surface" as "a glaze-coated or inherently glossy object in which an **additional** glaze is applied to the object prior to an image being applied to the object via a transfer agent." (emphasis added). Contrary to the plain language of the '237 Patent, ACS argues that a substrate is a glaze-coated or inherently glossy object which then requires a **second** glaze prior to the image transfer.

### 1. "Glossy Surface" When the Object to Be Fired Is Glass

One example of a glossy substrate (*i.e.* object with a glossy surface) described in the '237 Patent is glass. As Ms. Banhazl defines: a "Glossy Substrate refers to the surface of an object … [which] is inherently glossy (i.e. glass) … and is capable of withstanding the firing temperatures of a kiln." *See* '237 Patent, Col. 4, Lns. 25-29. Glass is characteristically glossy; thus it does not

**Plaintiff's Reply Claim Construction- 4**

require the addition of glaze to create a glossy surface (as required by ACS's novel glass glaze theory).  *See* Banhazl Decl. at ¶ 24. [3]

### 2.  Creation of a "Glossy Surface" by Glazing Bisque

The interaction between the terms "substrate," "glossy substrate," and "glossy surface" in the '237 Patent is not as complicated as Defendant pretends.  Commonsense application of the ordinary meanings of these terms is simple: the "substrate" can be made into a "glossy substrate" by adding a "glossy surface."  Defendant's convoluted argument confuses the terms and conflicts with the specification.

The specification defines "glaze" as "the coating that becomes the **glossy surface** after being applied to an object and fired in a kiln." '237 Patent, Col. 4, Lns. 10-11 (emphasis added). Thus, the "glossy surface" for ceramics is the glaze coating outside the ceramic piece after being fired in a kiln, as proposed by Banhazl:  "in the example of bisque, it may have a glaze applied to obtain a glossy surface."  *See id*. at Col. 4, Lns. 13-15.  The definition of "glossy substrate" directly supports this interpretation: "[t]he surface of an object after it has been coated with a ceramic glaze or is inherently glossy (*i.e.* glass or commercially available glazed ceramic pieces) and is capable of withstanding the firing temperatures of a kiln." '237 Patent, Col. 4, Lns. 25-29.

The remainder of the definition for glossy substrate refers to the example of a glossy substrate which is a glazed ceramic piece.  In the glazed example, Ms. Banhazl explains that "a glossy substrate may be made to have a [its] glossy surface through the application of a glaze prior to applying an image via the transfer agent."  *See* '237 Patent, Col. 4, Lns. 29-32.  This is an example of how a glossy surface is created on a substrate – by adding glaze.  Since the sentence uses the modifier glossy twice – both before substrate and surface, ACS seeks to insert confusion

---

[3]  *See Exergen Corp. v. Kids-Med, Inc.,* 189 F. Supp. 237, 251 (D. Mass. 2016) (stating the inventor's testimony is appropriate extrinsic evidence in determining claim construction).

**Plaintiff's Reply Claim Construction- 5**

by suggesting that a glossy surface is created only through double glazing. While such a narrow and unsupported construction would create a noninfringement defense for ACS (as it is uncommon to practice a second glaze step), it is not supported (let alone suggested) by a plain reading of the patent and its claims. *See* Banhazl Decl. at ¶ 24.

3. **ACS's Cited Evidence and the Knowledge of Persons Skilled in the Art Support Banhazl's Definition of "Glossy Surface**"

The prosecution history ACS proffers also supports Banhazl's rational construction of "glossy surface." ACS's cited example from the prosecution history defines "glossy substrate" as "a substrate with a glossy surface,'" rendering ACS's previous argument that "glossy substrate" and "substrate" refer to the same thing, fundamentally flawed. *See* Docket No. 31 at pg. 12.

Not only does ACS's proposed construction conflict with the specification and prosecution history, it is contradictory to how one skilled in the art would interpret the term. *See* Plaintiff's Opening Brief and September 7, 2017 Declaration by Terrie Banhazl (Docket No. 30 at pg. 10 and Docket No. 30-3) for support that applying an additional glaze to an already glazed or glossy substrate is not an accepted practice in the field of ceramics. Notably, ACS's own expert did not support – and would likely not support – ACS's construction of "glossy surface," highlighting that ACS's proposed definition is not how one of ordinary skill in the art would interpret the term. Thus, ACS's construction is improper and should not be adopted.

**D. "Film covered transfer paper" or "transfer paper"**

| Claim Term | Banhazl's Proposed Construction | ACS's Proposed Construction |
|---|---|---|
| "film covered transfer paper" or "transfer paper" | Paper backing stock bonded to a thin plastic layer by an adhesive which releases when moistened; also referred to as water slide decal paper. | Decal paper that is pre-coated with a film and acts as a transfer agent. |

Asserted claims 1, 6, 7, and 8 refer to using "film covered transfer paper" to embed an image onto a substrate. *See* '237 Patent, Claims 1 & 6-8. Banhazl's proposed definition for this

term aligns with the '237 Patent's definition of "Film Covered Water Slide Decal Paper" as "the commercial nomenclature for the specific pre-coated film covered transfer papers that act as a transfer agent in this invention. [ . . . ] The transfer agent with the image printed on is moistened, separated and adhered to a glossy substrate to be fired in a kiln and thus permanently affixed." '237 Patent, Col. 5, Lns. 11-14.

As explained in Plaintiff's Opening Brief, Defendant's proposed construction of "film covered transfer paper" as "decal paper that is pre-coated with a film and acts as a transfer agent" is circular and fails to define the term. Docket No. 30 at pg. 13.  This is in direct contravention of the purpose of claim construction. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("[C]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims.").  Banhazl's definition, in contrast, adopts the applicable definition provided by the '237 Patent, and actually defines the term without unduly relying on the term language itself.

In addition, Banhazl's inclusion of the words "paper backing stock" and "thin" is not improper or unfounded, as ACS argues. The term "paper backing stock" refers to the "paper bottom sheet" of the water slide decal paper, as described in the '237 Patent, Col. 2, Ln. 59.  The term "thin" is also used to describe Figure 1: "The digital image is printed onto a piece of film covered waterslide decal paper (8), the type which is comprised of two layers; a bottom layer made of adhesive coated paper (8b) and the top layer is a **thin** film (8a)." *Id.* at Col. 6, Lns. 12-16 (emphasis added).

For these reasons and those set forth in Plaintiff's Opening Brief (Docket No. 30 at pp. 11-13), Defendant's circular definition should not be adopted.

### E.  "Having the image printed" or "image is printed"

| Claim Term | Banhazl's Proposed Construction | ACS's Proposed Construction |
| --- | --- | --- |

| "having the image printed" or "image is printed" | Reproduce an exact likeness in printed form using off the shelf equipment requiring no customization | Having the image printed using a black and white laser printer or photocopier |
|---|---|---|

Asserted claims 1, 6, and 8 refer to "printing" an image onto the film side of transfer paper. '237 Patent, Claims 1, 6, & 8. ACS's arguments regarding the construction of "having the image printed" revolve around the inclusion of the added limitation of printing by "a black and white laser printer or photocopier." *See* Docket No. 31 at pp. 17-18. Thus, Plaintiff's proposed definition for "having the image printed" as set forth in her Opening Brief (Docket No. 30 at pp. 13-15) is not opposed or challenged by ACS and should be adopted by the Court.

The interchangeable terms "having the image printed" and "printing the image" are used in all of the asserted claims of the '237 Patent. ACS however only seeks to define these terms in claims 1-5. This is because its definition – if adopted – would render certain portions of claims 6 and 8 superfluous. Specifically, these claims include the phrase "printing the image" and also require that such printing is accomplished by a "laser printing device." ACS's attempt to sandwich in its definition of "laser printing device" into "printing the image" creates redundancy in claims 6 and 8, rendering portions of the claims superfluous. That cannot be correct. *See, e.g.*, *Merck & Co. v. Teva Phrams. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005) (rejecting claim construction that rendered other language of the claim "excess verbiage").

Furthermore, ACS cannot create differences in claim terms that are used consistently throughout the patent and claims. There is no discernable difference in the phrase "having the image printed" in claims 1-5 and "printing the image" in claims 6 and 8. Both phrases refer to the printing of the image and should be defined to mean the same. "A claim term s*hould be construed consistently* with its appearance in other places in the same claim or in other claims of the same patent." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) (emphasis added); *see also, Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1465 (Fed. Cir. 1998) ("A

**Plaintiff's Reply Claim Construction- 8**

word or phrase used consistently throughout a claim should be interpreted consistently");
*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) (holding that claim
terms found in different claims should be interpreted consistently). [4]

**F. "Transferring the film to the glossy surface" or "transferring the film with the image onto the glossy surface"**

| Claim Term | Banhazl's Proposed Construction | ACS's Proposed Construction |
|---|---|---|
| "transferring the film to the glossy surface" or "transferring the film with the image onto the glossy surface" | Adhering film onto the outside of a ceramic or glass piece without flipping over or adding adhesive. | Plain and ordinary meaning for "transferring the film to" and "transferring the film with the image onto"; "glossy surface" construed to mean "additional glaze applied prior to an image being transferred to the object via a transfer agent" |

Asserted claims 1, 6, 7, and 8 refer to "transferring the film with the image onto the glossy
surface." '237 Patent, Claims 1, 6, 7 & 8.  Defendant's proposed construction partially incorporates
its flawed construction for the term "glossy surface." As mentioned above, defining "glossy
surface" as requiring an additional glaze is antithetical to intrinsic and extrinsic evidence, including
accepted practice in the field of ceramics.

Banhazl's construction, on the other hand, is founded in the specification of the '237 Patent.
Although the claims of the '237 Patent use the term "transferring the film," the claim term "must
be read in view of the specification, of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d
1303, 1315 (Fed. Cir. 2005) (internal citation omitted).  The specification consistently describes
the claimed step of "transferring the film to the glossy surface" as adhering the film to the surface
of the substrate. *See* '237 Patent, Col. 2, Lns. 59-61; Col. 3, Lns. 20-24; Col. 5, Lns. 21-24; FIG.
2, ref. no. 24.  Therefore, Banhazl's use of the term "adhere" in her construction is proper.

---

[4] Banhazl's arguments opposing Defendant's contention that the claimed method require use of "black and white printer" are found in Section H *infra*.

Banhazl's proposed construction, as described in detail in Plaintiff's Opening Brief, also incorporates the simplicity of the claimed method, which does not require flipping the film to ensure the image makes direct contact with the surface of the substrate. Docket No. 30 at pp. 16-17. ACS's proposed construction, on the other hand, ignores this crucial aspect of the invention. ACS even argues that this aspect of Banhazl's definition is "found nowhere in the specification." *See* Docket No. 31 at pg. 16. This is blatantly false.

As Defendant argues, "[t]he plain and ordinary meaning of a claim term controls unless it can be shown that 'the patentee… with some language, indicate[d] a clear intent to do so in the patent.'" *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F. 3d 1367, 1373 (Fed. Cir. 2014). Furthermore, a patentee limits the scope of their invention when they repeatedly describe their invention as having a particular limitation. *See ICU Med., Inc. v. Alaris Sys., Inc.*, 558 F.3d 1368, 1374-75 (Fed. Cir. 2009) (construing "spike" to require a pointed tip because specification repeatedly describes it that way); see *also Honeywell Intern., Inc. v. ITT Industries, Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (limiting claims to particular fuel filter based on specification describing on "at least four occasions" the filter as "this invention" or "the present invention.")."

As Plaintiff's Opening Brief elaborates, such clear intent is found within the specification. *See* Docket No. 30 at pp. 16-17. The '237 Patent specification includes descriptions of the prior art, the disadvantages of the prior art, and an in-depth description of how the present invention is superior because it avoids said prior art's complicated process of flipping the transfer film over. Such disparagement of and differentiation from the prior art is reflected in the claims. *See id.*

As the specification indicates, sandwiching the film between the image and the substrate is at the core of the invention. *See* '237 Patent, Col. 2, Ln. 65 – Col. 3, Ln. 13. To do otherwise would directly mimic the prior art's process of placing the printed image directly onto the substrate, requiring the image to be printed as a mirror image, and then causing the film to be flipped over

**Plaintiff's Reply Claim Construction- 10**

before placing on the substrate. *See* '237 Patent, Col. 2, Lns. 10-14. As avoidance of flipping the film in the transfer process is a necessary limitation at the heart of the invention, Banhazl's proposed construction should be adopted. *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003) ("where the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims").

### G. "Evaporate"

| Claim Term | Banhazl's Proposed Construction | ACS's Proposed Construction |
|---|---|---|
| "evaporate" | Melt; process of removing materials through vaporization. | To convert into vapor. |

Asserted claims 1 and 8 refer to the patented method "heating the substrate with the film to a temperature sufficient to **evaporate** the film and to embed the image into the glossy surface." *See* '237 Patent, Claims 1 & 8. As ACS agrees, the '237 Patent states that "the surface of the glossy substrate softens and the film of the transfer agent **melts or evaporates** away leaving the iron oxide pigmented image." '237 Patent, Abstract (emphasis added). The specification further teaches that "the film under the image, **melts or evaporates** away" due to the firing temperatures of the kiln and "[d]uring the firing process the decal's film layer, residual adhesive, and the polymer additives of the toner **melt and or evaporate** leaving just the iron oxide pigment." *Id.* at Col. 3, Lns. 6-10; Col. 5, Lns. 55-58.

However, ACS misconstrues these examples as distinguishing between melt and evaporate. *See* Docket No. 31 at pg. 13. Such an argument does not stand up to the common rules of semantics. The term "or" is a conjunction that connects words representing alternative terms for the same thing. Thus, the repeated use of "melt or evaporate" implies that the terms "melt" and "evaporate" are alternatives that refer to the same thing. Consequently, Banhazl's proposed construction of "evaporate" properly includes the term "melt" as an alternative.

**Plaintiff's Reply Claim Construction- 11**

ACS's proposed construction ignores the context within the specification and, for this reason, and for those articulated in Plaintiff's Opening Brief (Docket No. 30 at pp. 17-19), ACS's construction should not be adopted.

## H. "Embed"

| Claim Term | Banhazl's Proposed Construction | ACS's Proposed Construction |
|---|---|---|
| "embed(s)" | Sink into | To fix or be fixed into a surrounding mass permanently (i.e., in a way that exists perpetually) |

The term "embed(s)" is referred to in asserted claims 1 and 8: "heating the substrate with the film to a temperature sufficient to evaporate the film and to **embed** the image into the glossy surface." *See* '237 Patent, Claims 1 & 8 (emphasis added). In short, the specification consistently describes the claimed step of "embed[ing]" an image onto the substrate as the toner's pigment "sinks" into the surface of the substrate. *See, e.g.,* '237 Patent, Col. 3, Lns. 10-15. As the term "embed" in claims 1 and 8 replaces the term "sinks into," as described in the specification, the terms should be read as equivalent. *See* Docket No. 30 at pp. 19-20.

## I. "Laser printing device"

| Claim Term | Banhazl's Proposed Construction | ACS's Proposed Construction |
|---|---|---|
| "laser printing device" | A machine capable of reproducing images using at least black toner | A black and white laser printer |

Asserted claims 6, 8 and 9 refer to the patented method "printing the image onto the film side of a sheet of transfer paper using a **laser printing device** using an iron-oxide based toner." *See* '237 Patent, Claims 6, 8 & 9 (emphasis added). The parties' proposed different definitions for these terms are set forth above.

Banhazl's proposed construction is supported directly by the specification.: "[A] user may print or copy any image to an imaging device utilizing toner with iron oxide to imprint the image onto a film covered transfer agent." *See* '237 Patent Abstract and Col. 2, Lns. 49-53 ("In

embodiments of the present invention, an iron oxide containing toner, standard in many inexpensive mass marketed 'off-the-shelf' laser printers and photocopiers, is used to print any image or photograph onto a transfer agent, in this case a film covered water slide decal paper.").

Moreover, ACS incorrectly asserts that the '237 Patent disparages the use of general color printers. *See* Docket No. 31 at pg. 18. To the contrary, the specification disparages "expensive specialized machinery containing ceramic colorant infused ribbons," and printers "with retrofitted ceramic pigments replacing the machine's standard inks or toner." '237 Patent, Col. 1, Lns. 36-38 and 40-42. These printers "require a high degree of expertise and are extremely expensive and are only practical for printing professionals producing medium-to-large runs." *Id.* at Col. 1, Lns. 44-46. Additionally, "these processes require multiple production steps and specialty equipment which wouldn't fit into a small studio, school classroom or home office." *Id.* at Col. 1, Lns. 46-49. Thus, general color printers are not disparaged in the specification, as ACS asserts. Color printers are perfectly capable of printing with black toner, and, accordingly, are within the scope of the claim term "laser printing device."

ACS's definition of "laser printing device" is further improper because there is no such machine as an off the shelf "black and white printer." There are mono-printers (black only). Thus, in addition to be unduly limiting, ACS's definition contemplates that which does not exist.

## CONCLUSION

For the reasons set forth above and as set forth in Plaintiff's Opening Brief (Docket No. 30), Ms. Banhazl respectfully requests that this Court adopt Plaintiff's proposed constructions for each of the disputed claims of the patent in suit.

September 29, 2017                            Respectfully submitted,

                                             TERRIE BANHAZL

                                             By Her Attorneys,

                                             /s/ Catherine I. Rajwani_____
                                             Catherine I. Rajwani, Esq. (BBO# 674443)
                                             Lucia A. Passanisi, Esq. (BBO# 691189)
                                             THE HARBOR LAW GROUP
                                             300 West Main Street, Building A, Unit 1
                                             Northborough, MA 01532
                                             Phone: (508) 393-9244
                                             Fax: (508) 393-92245
                                             Email: crajwani@harborlaw.com
                                             Email: passanisi@harborlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2017 the foregoing document was served electronically on all counsel of record via the Court's ECF filing system.

                                    /s/ Lucia A. Passanisi

**Plaintiff's Reply Claim Construction- 14**