UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| TERRIE BANHAZL, doing business as HEIRLOOM CERAMICS, <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> THE AMERICAN CERAMIC SOCIETY, <br><br> Defendant and Counter-Claimant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 16-cv-10791-ADB <br> * <br> * <br> * <br> * <br> * <br> * |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO STRIKE AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Inventor Terrie Banhazl ("Plaintiff") brings this patent infringement action against the American Ceramic Society ("Defendant") and alleges that Defendant's dissemination of how-to tutorials, step-by-step instructions, and instructional videos infringes all claims of U.S. Patent No. 7,622,237 ("the '237 patent"). [ECF No. 13 ¶ 29]. The '237 patent claims a method for permanently transferring an image to a ceramic or glass piece. [ECF No. 13-1]. Currently before the Court are Plaintiff's motion to strike, [ECF No. 59], and Defendant's motion for summary judgment, [ECF No. 64]. For the reasons set forth below, Plaintiff's motion is GRANTED and Defendant's motion is DENIED.

I.      **BACKGROUND**

    A.      **Factual Background**

Except as otherwise noted, the following facts are undisputed.[1]

Plaintiff is the inventor on the '237 patent, which is entitled "System, Apparatus, and Method for the Permanent Transfer of Images onto Glossy Surfaces." [ECF No. 68 ¶¶ 1, 3]. The '237 patent contains nine claims reciting a method of permanently transferring images onto glossy surfaces. [Id. ¶ 2]. Plaintiff filed the application that led to the issuance of the '237 patent on September 26, 2006. [Id. ¶ 4]. The U.S. Patent and Trademark Office initially rejected and objected to the proposed claims, Plaintiff responded by amending her claims, and the examiner then allowed those revised claims. [Id. ¶¶ 7, 18, 19, 25]. The '237 patent describes the invention at issue as "discover[ing] that when an iron oxide containing image is printed on the film layer of this type of transfer paper, adhered to a glazed ceramic surface, and subjected to the firing temperatures of a kiln, the residual adhesive, the polymer additives of the toner, and the film under the image, melts or evaporates away." [Id. ¶ 26 (quoting ECF No. 13-1 at 5 (3:4–10)].

Plaintiff, through her company Heirloom Ceramics, sells multi-surface transfer paper with instructions to create custom pieces using her patented process, books describing the process, and kits to make the decals used in the process. [ECF No. 68 ¶¶ 27, 30]. Plaintiff accuses Defendant of engaging in activities that directly infringe the '237 patent's claims through its artist employees and independent contractors, who provide demonstrations at conferences, trade shows, workshops, online, and via instructional videos and DVDs. [Id. ¶ 31].

---

[1] The Court draws the facts from Plaintiff's response to Defendant's statement of undisputed material facts, [ECF No. 68], as well as Defendant's reply to Plaintiff's response, [ECF No. 70], which contain both parties' contentions regarding the facts set forth in support of Defendant's motion for summary judgment, Defendant's statement of undisputed material facts, [ECF No. 64-2], and the documents referenced therein.

In addition, Plaintiff accuses Defendant of induced infringement through its how-to tutorials and step-by-step instructions in its magazines and trade journals, and through its instructional videos of artists on its YouTube channel, DVDs, online videos and conferences, and its website. [Id. ¶ 32].

### B. Procedural Background

Plaintiff commenced this action in April 2016, [ECF No. 1], and later filed an amended complaint, [ECF No. 13]. Plaintiff's sole claim is that Defendant has directly and indirectly infringed the '237 patent. [Id. ¶¶ 28–34]. Defendant filed counterclaims. [ECF No. 15]. The parties submitted briefs on claim construction, [ECF Nos. 30–31, 34–35], and on December 12, 2017, the Court held a Markman hearing, [ECF No. 44]. The Court entered its Order on claim construction on July 26, 2019. [ECF No. 46]. On April 27, 2020, Plaintiff moved to strike portions of Defendant's expert's report, [ECF No. 59], which Defendant opposed, [ECF No. 65]. On May 8, 2020, Defendant moved for summary judgment. [ECF No. 64]. Plaintiff opposed, [ECF No. 66], and Defendant replied, [ECF No. 69].

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003). Thus, "[a] genuine issue exists as to such a

fact if there is evidence from which a reasonable trier could decide the fact either way." Id. By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must . . . 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)). That is, the nonmoving party must set forth specific, material evidence showing that there is a genuine disagreement as to some material fact. Plat 20, Lot 17, Great Harbor Neck, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6. The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and

4

material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

"Patent infringement analysis involves two steps: [(1)] the threshold construction of the meaning and scope of the asserted claim, followed by [(2)] the determination of whether the accused product infringes the properly construed claim." Athletic Alts., Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996). "The second step, determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact." Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998). "To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1353 (Fed. Cir. 2001).

"Literal infringement requires that every limitation of the patent claim be found in the accused device." Durel Corp. v. Osram Sylvania, Inc., 256 F.3d 1298, 1303 (Fed. Cir. 2001) (quoting Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997)). "If no reasonable jury could possibly find that an accused product satisfies every claim limitation of the asserted claims . . . then summary judgment of noninfringement must be granted." EveryScape, Inc. v. Adobe Sys., Inc., 8 F. Supp. 3d 38, 45 (D. Mass. 2014). In contrast, the doctrine of equivalents

> requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method.

Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc., 943 F.3d 929, 938 (Fed. Cir. 2019) (quoting AquaTex Indus., Inc. v. Techniche Sols., 479 F.3d 1320, 1326 (Fed. Cir. 2007)). "The determination of infringement under the doctrine of equivalents is limited by two primary legal doctrines: (1) prosecution history estoppel and (2) the 'all elements' rule." Seachange Int'l, Inc. v. C-COR Inc., 413 F.3d 1361, 1378 (Fed. Cir. 2005) (quoting Lockheed Martin Corp. v. Space Sys./Loral, Inc., 324 F.3d 1308, 1318 (Fed. Cir. 2003)). "The application of these doctrines is a question of law." Id.

B. **Motion to Strike**[2]

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Federal Rule of Evidence 702 provides that a person

> who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. The expert must be "qualified in the specific subject for which his [or her] testimony is offered." Garfield v. Gorilla, Inc., No. 13-cv-12810, 2015 U.S. Dist. LEXIS 81236, at *4 (D. Mass. June 23, 2015) (quoting Whiting v. Boston Edison Co., 891 F. Supp. 12, 24 (D. Mass. 1995)). The Court's

---

[2] Plaintiff does not cite a particular rule or basis for her motion beyond citing relevance and inconsistency with the Court's claim construction Order. [ECF No. 60]. The Court construes Plaintiff's motion as a motion to exclude under Federal Rule of Evidence 702.

6

analysis is "not limited to an appraisal of an expert's credentials and techniques but also entails an examination of his [or her] conclusions to determine whether they flow rationally from the methodology employed." Samaan v. St. Joseph Hosp., 670 F.3d 21, 32 (1st Cir. 2012).

In the context of a patent dispute, claim construction is a question of law for the Court to decide, not an expert. See Markman v. Westview Instruments, 517 U.S. 370, 391 (1996). As a result, "'an expert's analysis that contradicts the language or reasoning behind a court's claim construction order' cannot be used to 'create an issue of fact that precludes summary judgment.'" Intellectual Ventures I, LLC v. NetApp, Inc., No. 16-cv-10860, 2020 U.S. Dist. LEXIS 58061, at *18–19 (D. Mass. Apr. 2, 2020) (quoting ICU Med., Inc. v. Alaris Med. Sys., Inc., No. 04-cv-00689, 2007 U.S. Dist. LEXIS 13156, at *42 (C.D. Cal. Jan. 22, 2007)).

## III. DISCUSSION

This Court has completed the first step of its infringement analysis through its claim construction Order. See Athletic Alts., Inc., 73 F.3d at 1578; [ECF No. 46]. Although the second step, an inquiry into infringement, is a question of fact for the jury, Defendant's position is that summary judgment is appropriate because there are no genuine disputes of material fact and Plaintiff cannot establish infringement. [ECF No. 64-1 at 6]. Defendant's sole asserted basis for summary judgment is its contention that the film used to transfer an image to a substrate using Plaintiff's patented process does not evaporate when heated, but instead burns, so that Defendant's actions are not infringing on the claims. [Id. at 6, 13, 23]. Plaintiff responds that Defendant is applying a new construction of the term "evaporate" that is inconsistent with this Court's claim construction. [ECF No. 66 at 3]. In addition, Plaintiff has moved to strike portions of two reports from Defendant's expert, Richard Burkett, related to this disputed claim construction, [ECF Nos. 59, 60], which Defendant opposes, [ECF No. 65].

The parties submitted the term "evaporate," which is contained in two claims in the '237 patent, for claim construction. [ECF No. 43; ECF No. 43-1 at 2]. The term "evaporate" is used in the claims as follows: "heating the substrate with the film to a temperature sufficient to *evaporate the film* and to embed the image into the glossy surface" (Claim 1) and "heating the substrate with the film to a temperature *such that the film evaporates* and the image embeds into the glossy surface" (Claim 8). [ECF No. 13-1 at 6 (6:63–65) (emphasis added); id. at 7 (8:7–9) (emphasis added)]. In essence, Plaintiff's proposed construction would have construed the term to be interchangeable with the word "melt," [ECF No. 30 at 18–19], while Defendant's proposed construction would have limited the term to reference only vaporization, [ECF No. 31 at 16–17]. The parties did not brief whether all of the film had to evaporate, but instead focused on whether "evaporate" and "melt" were synonymous or should be read as two different processes. See [ECF No. 30 at 18–20; ECF No. 31 at 15–17; ECF No. 34 at 9–10; ECF No. 35 at 12–13].

The Court held a Markman hearing, [ECF No. 44], after which it issued its Order on claim construction, [ECF No. 46]. When a court engages in claim construction,

> [t]he inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation. That starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art. Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.

Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (citations omitted). The parties disagreed about the qualifications of a person of ordinary skill in the art ("POSITA"), though neither party proposed that a POSITA would require a scientific degree or related experience. [ECF No. 46 at 4–5; ECF Nos. 31, 35]. The Court ultimately determined that, "[b]ased on the specification and the declarations submitted by the parties," a POSITA for purposes of the '237

8

patent "is someone who has at least five years of experience making ceramics and has familiarity with the tools and materials commonly used in ceramics, including clays, glazes, and the use of a kiln." [ECF No. 46 at 5].

In discussing the parties' proposed constructions for the term "evaporate," the Court agreed with Defendant's position that "melting" and "evaporating" were two different processes, [ECF No. 46 at 17–18], but also noted that the specification consistently referred to "melts or evaporates," [id.]. The Court went on to observe that

> [w]hen heat is slowly applied to a solid, it typically melts and then, after melting into a liquid, evaporates. Were a solid, such as a film, put into a kiln that was then heated up to 1855 degrees Fahrenheit, it would not simply evaporate, or change into a gas. Instead, it would first melt, and then, *those portions that became liquid* would evaporate. Defendant's expert supports this basic science when he attests that he understands the '237 Patent "to mean that, when following steps of the method, the film evaporates (that is, turns from a solid/liquid into a gaseous substance).["] He adds that, in his experience, film burns during firing in a kiln, rather than immediately evaporating. Further, the specification acknowledges that the film must first melt before it evaporates, by referring to "the melting phase of the film."

[Id. at 18 (emphasis added) (citations omitted)]. Consistent with the principles articulated in Phillips, 415 F.3d at 1313, the Court then explicitly construed "evaporate" in the context of "what a [POSITA] would understand when reading the claims in the context of the specification," [ECF No. 46 at 18]. The Court's construction was "to change a material into gas, including any predecessor melting phase." [Id.].

In its motion for summary judgment, Defendant now claims that this construction requires that all components of the film must evaporate such that those components could be reconstituted into film again, much like steam can be converted back into water or ice—what Defendant refers to as a "state change." [ECF No. 64-1 at 14–15]. Defendant then argues that Plaintiff's process does not satisfy this construction because it results in the film breaking down, possibly through burning, such that only some parts of the film (if any) evaporate and the film

9

can therefore never be reconstituted. [Id.]. To support this new construction of "evaporate," Defendant relies on testimony from its expert, Burkett. [Id.]. Burkett has a bachelor's degree in art and a master's degree in fine arts with a focus on ceramics and photographic arts. [ECF No. 64-9 at 5]. He is a professional ceramicist with nearly fifty years of experience with ceramics. [Id.]. Notably absent from Burkett's qualifications is a degree or experience in chemistry or a related scientific field, nor does Defendant contend that Burkett possesses these additional qualifications. See generally [ECF Nos. 64-1, 64-9, 69].

Throughout his expert reports and deposition testimony, relied upon by Defendant to support its motion for summary judgment, Burkett repeatedly refers to scientific concepts and makes scientific conclusions, such as: "the science establishes that the film burns and does not evaporate," [ECF No. 64-9 ¶ 31]; "[the film] changes to byproducts that are released by burning," [id.]; "[t]his would be typical of burning—the oxidation of carbon-based materials with the carbon changing to carbon dioxide," [ECF No. 67-5 ¶ 77]; and "[t]his is not evaporation even though there may be plasticizers with the film that are volatile," [id.]. What began as a question of "basic science" at claim construction, [ECF No. 46 at 18], has morphed into a scientific inquiry into the chemical process of heating the film to a high temperature and the resulting components that remain after heating. In addition, although neither party raised the question during claim construction of whether all components of the film had to evaporate, Burkett now insists that because, at least in his opinion, only "some portions" of the film evaporate, the film is not going through the "state change" required under his construction of "evaporate," because the film cannot shift from an evaporated form back into a liquid or solid form. [ECF No. 60-2 at 13–14 (Burkett Depo. Tr.) (stating that "some portions of the film . . .

10

probably" evaporate while other portions are destroyed); ECF No. 64-9 ¶ 29 (discussing the process of evaporation as a state change)].

First, Burkett is not qualified to opine on what happens to the heated film to the extent provided in his reports and testimony. See Daubert, 509 U.S. at 597; Fed. R. Evid. 702. Plaintiff, serving as her own expert in this matter, similarly opined on scientific matters outside the scope of her expertise. [ECF No. 67-3]. Although Plaintiff, too, might have overstepped the bounds of her expertise, she has already withdrawn the offending portions of her report, albeit late in the game. [ECF No. 67-1 at 1–7 (June 2020 correspondence between counsel discussing withdrawn portions of Plaintiff's expert report)]. If the scientific process involved in heating the film referenced in the claims were paramount to either parties' case, they should have engaged qualified experts to opine on that subject matter.

Second, Defendant's proposed re-construction of the term "evaporate" is not only improper procedurally, but is also improper as a legal matter given its attempt to read the claims in isolation and without reference to the understanding of a POSITA with at least five years of experience making ceramics. "If [Defendant] wanted to tee up a summary judgment position based on a particular construction, 'it could (and should) have sought a construction to that effect.'" Skyhook Wireless, Inc. v. Google, Inc., 159 F. Supp. 3d 144, 157 (D. Mass. 2015) (quoting ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509, 520 (Fed. Cir. 2012)). "The Federal Circuit has held that 'district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims,' especially where the parties do not raise a dispute until after the Markman stage." GPNE Corp. v. Apple Inc., 108 F. Supp. 3d 839, 851–52 (N.D. Cal. 2015) (quoting O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1362 (Fed. Cir. 2008)). By using its own construction of "evaporate" to claim that Plaintiff has

presented no evidence of infringement, [ECF No. 64-1], Defendant "is essentially [proffering] a claim construction argument regarding the meaning of the term ['evaporate'] . . . in the guise of a challenge to the sufficiency of the evidence of infringement." Comcast IP Holdings I LLC v. Sprint Communs. Co., L.P., 850 F.3d 1302, 1311 (Fed. Cir. 2017) (first alteration in original) (quoting ePlus, Inc., 700 F.3d at 520).

As the Court noted during the Markman hearing and consistent with its claim construction Order, Defendant has not persuaded the Court that a POSITA, as defined by this Court, would understand the claims or the invention to require the film to do anything more than disappear—whether through melting, evaporating, or burning (in whole or in part)—during heating at a high temperature. [ECF No. 44; ECF No. 46 at 16–18]. Burkett acknowledged as much during his deposition when he testified that "any ordinary person putting decal film in a kiln and firing it, it disappears, you would have to assume that it evaporates." [ECF No. 67-4 at 6; id. ("Is that what a person of ordinary skill in the art would assume?  A. Probably."); id. at 8 ("They might just think it just goes away.")]. The Court did not construe the term to require that all portions of the film must evaporate, nor did the parties indicate that the claims should be read to require this. Instead, the Court observed that "a solid, such as a film . . . would first melt, and then, *those portions that became liquid* would evaporate." [ECF No. 46 at 18 (emphasis added)]. The Court's construction of the term is, in part, "to change a material into a gas," with no additional limitation such as "entirely or completely" or "with the ability to change back into a solid."

"The Federal Circuit has held that it can be error to engage in hypertechnical refinements of the meaning of claims following claim construction to support a grant of summary judgment." Apple, Inc. v. Samsung Elecs. Co., No. 12-cv-00630, 2014 U.S. Dist. LEXIS 8157, at *68–69

(N.D. Cal. Jan. 21, 2014) (discussing AFG Indus., Inc. v. Cardinal IG Co., 375 F.3d 1367 (Fed. Cir. 2004)).  By relying on an expert with no scientific expertise and attempting to fashion a new construction that is inconsistent with Defendant's position at claim construction and this Court's claim construction Order, Defendant is asking the Court to engage in just this sort of "hypertechnical refinement," which the Court will not do.  See id.  Defendant has failed to meet its burden at summary judgment and its motion is therefore denied.  See Netword, LLC, 242 F.3d at 1353 (reciting summary judgment standard in a patent infringement case as requiring the moving party to show that "no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee").[3]

As to Plaintiff's motion to strike those portions of Burkett's reports and testimony that apply a construction of "evaporate" that is different from this Court's Order,

> [t]he claim constructions embodied in the [claim construction] Order are legal conclusions . . . [which] cannot be undermined by later expert testimony that purports only to "explain" or "provide context" to the terms, but instead logically or syntactically contradicts the Court's constructions or the expressed reasoning that lead to those constructions.

ICU Med., 2007 U.S. Dist. LEXIS 13156, at *42–43; see Clare v. Chrysler Grp., LLC, 819 F.3d 1323, 1332–33 (Fed. Cir. 2016) (affirming summary judgment where plaintiff's expert relied on an incorrect understanding of the district court's claim construction).  "To the extent [defendant's expert] proffers opinions that are something more than disguised claim construction arguments, those opinions . . . are now irrelevant or unreliable, as they rely on a claim construction other than the Court's."  523 IP LLC v. CureMD.Com, 48 F. Supp. 3d 600, 649 (S.D.N.Y. 2014); see EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc., No. 10-cv-00379, 2012 U.S. Dist. LEXIS

---

[3] The Court notes that this Order "does not resolve the parties' disagreement about the availability of the doctrine of equivalents based on prosecution history estoppel which [D]efendant may raise again during the trial."  Smith & Nephew, Inc. v. Interlace Med., Inc., No. 10-cv-10951, 2012 U.S. Dist. LEXIS 77404, at *3 (D. Mass. June 5, 2012).

188778, at *17 (E.D. Tex. Sep. 7, 2012) (striking portions of expert report that were inconsistent with court's claim construction order).  The Court therefore grants Plaintiff's motion to strike.

## IV.  CONCLUSION

Accordingly, for the reasons discussed herein, Plaintiff's motion to strike, [ECF No. 59], is <u>GRANTED</u>, and Defendant's motion for summary judgment, [ECF No. 64], is <u>DENIED</u>.  The Court strikes portions of paragraphs 59, 62, 76, 78, 82, 83, 87, and 88 of Burkett's Invalidity Report and paragraphs 26, 29, 33, 39, 40, 41, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60, 62, 64, 66, 68, 70, 72, 74, and 78 of Burkett's Rebuttal Report to the extent these paragraphs and any related testimony rely on a meaning of the word "evaporate" that is inconsistent with this Court's construction of that term.

**SO ORDERED.**

March 5, 2021                                                                   /s/ Allison D. Burroughs
                                                                                                                     ALLISON D. BURROUGHS
                                                                                                                     U.S. DISTRICT JUDGE